Good morning, your honors. My name is Perry Dobson, representing the Abboud family in this appeal. A brief recitation of facts is all I'm going to do. The plaintiff's decedent was an 80-year-old man. He was killed in 2001 by an Amtrak train running on Union Pacific tracks. He was crossing the tracks using a well-worn path, which is illustrated in photos which have been provided to the plaintiff. The train was going about 40 miles an hour. There were no trains, there were no fences or signs along the tracks at that point. What do we do with the fact that the tracks themselves are, in this recent California case itself, are themselves a warning? Your suggestion is that they should have put a fence up or put signs up. The California court seems to take the position that railroad tracks are inherently dangerous in and of themselves and therefore constitute a warning. Are you talking about the Kristof case? Would you also address the concept of fencing? Fencing happens to be a very lively conversation these days along the border. One of the arguments made is, how much are you going to fence? What would they do, put a fence across that path, or how far along does that duty run? And then that path gets created because people find a way, and then you put a fence up, won't pipe people if they want a shortcut, find another way. That's what troubles me. Sure, I was pretty sure you would ask that question. Let me just mention Kristof. I think that case turned on whether the plaintiff proved causation. The other cases, including the issue which we're talking about, was dicta in Kristof. Also, the problem I have with Kristof is it didn't mention anything about the cases after the Roland v. Christian case, which is the seminal case which changed the whole law of trespassing. And the cases relied upon on Kristof are pre-Roland cases. And the reason pre-Roland cases are not relevant or shouldn't even be used is Roland changed the law. It held that the extent of a landlord's duty to a trespasser is controlled by several factors, the most important of which is foreseeability. Pre-Roland cases, and there's many, many of them, and a lot of them are railroad cases, all held that the trespasser has no rights. And so, because he's trespassing, that was changed by Roland. Right, we understand that. But did Kristof rely on trespasser status? Well, I think Kristof was someone, I'm trying to remember the facts. Oh, it was a bridge. That's right, that's right. It was a bridge and somebody was trapped on the bridge and should have laid down maybe and was hit. Yeah, I think that's a trespassing status. Now, you've got, when you talk about fencing, it obviously wouldn't have applied in the Kristof situation. No, I didn't mean Kristof addressed fencing. Kristof goes to warning signs and fencing was just my general concern about how fencing's feasible as a solution when people beat a path around fences all the time. So, where do you draw the line, in other words? Okay, fencing, we're talking only about well-worn paths, well-traveled areas. And well-worn paths and well-traveled areas are known to the railroads. It was real easy to spot this particular place because of the path. Now, when you put a fence across there, it would be in well-traveled areas, populated areas, the tracks are regularly punctuated by crossing guards. And so, you could put a fence, in this particular case, from one crossing guard to another crossing guard, which would probably be several hundred yards. And that would, what it would do is deter the people that are going to use this well-worn path. They would have to be stopped and they would have to travel horizontally along the fence into the crossing guard. Now, when they get to the crossing guard, if the train is coming, there's lights flashing, there's bells ringing, and the crossing guard is going down. Now, I've handled a lot of train cases. In the Silva case, of course, cited in here, that's also my case. Most people that are hit by trains, there's two classes of people, one where there's intent. And we can't treat those. If they're going to kill themselves, they're going to kill themselves no matter what they're going to do. But the other class of people that's hit by trains are people that are distracted. In Silva, the guy was listening to his earphones. In other cases, in our case, he was obviously, the old man, the 80-year-old man, was obviously trying to get to where he was going. He had his head down, according to the witnesses, and he was thinking about something else. The whole point of fences is to break the routine of the person and alert him to the fact that, wow, there's danger ahead. Be aware. And if they come across a fence, they'll be diverted, and then they'll go out to the crossing guard, presumably. And if there's a train coming at that point, then, you know, bells are ringing, lights are flashing, and everything else. So it's the question of diverting. I mean, a fence isn't going to divert everyone. There's going to be some people that are going to try to scale the fence. That's true. But not our decision as an 80-year-old man. What you're asking us to do is to impose an obligation on the railroad to put fencing every place along the line where people tend to cross without cross arms. And is that an obligation that we should be imposing? Clearly, there was plenty of visibility here in both directions. It wasn't like the train coming around a corner. Well, what you've got is BART fences their tracks. Amtrak fences their tracks. The only rail transportation company that doesn't fence their tracks appears to me to be Union Pacific, which is the only railroad company in California now. And we're talking about tracks. There's a place in Union City where the tracks go within 12 feet of a park where children roam. And I have many pictures. This is in connection with my other case of children curiously going up to the tracks and crossing the tracks and playing on the tracks. This is children. Now, there's no fence there. There's no fence anywhere that Union Pacific that I know has ever constructed fencing off their tracks. They have a uniform policy. They do not fence the tracks anywhere. They should wear people in highly populated areas. Union Pacific is enormously rich. It's the highest, biggest property owner in the state of California other than the federal government. And they have lots of money, but they refuse to fence tracks anywhere. What I'm trying to do is impose an obligation where it's likely that people are going to be crossing, like well-worn paths, to fence those particular areas. And I think it would save lives. It would have saved my client's decedent's life for sure. An 80-year-old man is not going to try to scale a fence. He's going to go alongside the fence and either go to the crossing guard, cross there. By that time, he'll be alerted. Or else, the next time, he'll take the safe way, which was over the bridge, and he won't take that route again. That's the thing. You divert people to a safe place, a crossing guard, or you say to them. What is your theory? Is it your theory that they have an obligation to anticipate that people will occasionally get killed? I mean, this sounds more like a legislative argument than an argument that under the law, we can impose that kind of a duty on the railroad. Well, I have the example of well-worn paths. They could start by ascertaining where the well-worn paths are in the Bay Area, for example, and fence off those from the nearest crossing guard on either side. That would be a really good start. Now, are we imposing this? Aren't we applying California law? Yes, yes. Except for when you get to federal preemption. But California law doesn't seem to impose that kind of a duty. Well, not specifically, no. No, there's no law in California imposing that duty. But we've got a duty. I mean, the courts can. I mean, if you were to impose that duty, you could do it. I mean, it's within the court's power to do that, even without a California law, to make a ruling that tracks that are heavily traveled and that are unoffensive. What basis would we do it? Okay. First of all, it has to be a source of law. It would either have to be a federal law or a state law. All right? I mean, it has to be one of those two. Well, if there has to be a law, what entity would do it? There has to be a source for the law. You want us to come up with a legal rule. It has to come either from federal law or from state law. Those are the only two kinds of law we can apply. It's not an international law case. So it's one of those two. So which would it be? I don't think it's federal law, right? You've got a federal preemption argument. But here, really, you're talking about state law, aren't you? Yeah. And what your question seems to be is what would be the genesis of your ruling? Would there have to be a state law that you would be enforcing in order to make a ruling? You need a state law in order to rule in my favor. Is that what you're saying? Well, I was following up on Judge Fletcher's question. Judge Fletcher suggested to you that state law does not impose such a duty. And you seem to agree with that, but you said, well, we can come up with a rule like that anyway. Oh, oh. And I – where would this rule come from? It has to come out of some body of law, either state law or federal law. Yeah. It's Civil Code. California Civil Code. California Civil Code, 1714. But if the state courts have interpreted state law as not imposing such a duty, how can we come up with a rule that's different unless we contradict the state courts? Well, the genesis of the duty imposed by Roland B. Christian was in the Civil Code section. Everyone is responsible not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care and the management of his or her property. I agree that's kind of general, but it wasn't used to enforce property obligations before Roland B. Christian, and Roland B. Christian used that and actually said that not in a railroad case, but made a responsibility to a property owner, to a person injured on the property, if there was a, for example, an attractive nuisance on your property, Roland B. Christian says the property owner has a duty. You know, I do remember Roland B. Christian. Yeah. I do know what it holds and what the body of law holds, but what it holds is a body of California law, and I think as Judge Fletcher's question to you implied, California law does not seem, this very body of California law does not seem to impose a duty on railroad's defense. So where do we, you know, how can we go encrusting this into California law when the state courts themselves, which are the ultimate arbiters of state law, have refused to do so? Well, the California law, other than this civil court section, you'd have to look at the actual cases. Roland B. Christian, Silva, and the Beard v. Atchison, Topeka, and Santa Fe. And all of these cases go into the factors outlined by Roland. There are seven factors affecting the duty owed by a landowner to a person who could be trespassing. The most important is foreseeability. And all the cases say foreseeability is the most important thing. These cases say, and it is mostly case law, they say that if it's foreseeable that somebody's going to be crossing your land or using your land, whether it's children, old men, or whatever, you now have a duty to take reasonable precautions for their safety. Now, the reasonable precautions is the genesis of the defendant's case, because they're saying, well, you know, the fences would cost an enormous amount of money, and they're talking about sheets of steel and stuff like that. That's not the kind of fence. We're just talking about a regular old chain link fence six foot high. And so the case, the law is in the cases. There's not any statutory law other than this one section. Okay, thank you. Yeah. Oh, I was going to say something about federal preemption, if I could. We'll give you a minute for rebuttal. Okay, a minute for rebuttal? That's fine. Thank you. Good morning, Your Honors. My name is Joseph Maskovich. I represent Union Pacific Railroad. There is a co-counsel for Amtrak who will be addressing the preemption issues. I plan to take about seven minutes, and the rest of the ten minutes will be taken by co-counsel. This accident happened because Mr. Abood walked in front of a moving train that he should have seen, that he should have heard, and that he could have easily avoided. Let's not lose sight of the fact that in this record there is a pedestrian sidewalk that would have taken Mr. Abood to exactly the same place. It would have crossed underneath the railroad tracks and would have kept him completely out of harm's way. That's the case, if it's that obvious. Why do you think people created this path? It doesn't seem as if he's the first person to engage in the kind of conduct you're suggesting. So doesn't that suggest pretty clearly that notwithstanding the logic of what you're saying, in practice people are beating a path to this particular crossing, and doesn't that cause the railroad some concern? Your Honor, the record shows quite clearly that the railroad takes trespassing seriously. Well, trespassers, yes, but the ---- And it takes prevention of trespassing seriously. It does a lot in its efforts system-wide and in California to discourage trespassing and to prevent trespassing. Now, with respect to the specific question of whether we can put up a fence ---- Let's talk about this place instead of, you know ---- There is no evidence in this record who made that path. I don't want to get legislative here. I just want to look at the facts of this case. And the facts of this case show that there's a very definite path that's been created from a parking area that crosses onto the gravel, at least the rock portion. Now, I don't know whether those people go down there and then walk along the tracks to get to the safer position, or they walk there and go across the track. But if Union Pacific is taking this so seriously, doesn't this scream out for, hey, you've got a well-worn easement almost going across your tracks where you don't want them to be? A few responses to that, Your Honor. First of all, the fact that there's a well-worn path simply means trespassing occurs. Right, right. But trespassing occurs just about everywhere in our system, particularly in urban areas. So the question then becomes, as some of the questions to counsel made earlier, where do you draw the lines? That's the function of the duty analysis under California law, and in that respect, I think I would urge the Court to look closely at the California Supreme Court's decision in Parsons v. Crown Disposal. That was a case where the horseback rider sued a garbage company because as he was riding his horse, he came up behind a garbage truck, and the noise made by the garbage truck spooked the horse and threw him off. The California Supreme Court in that case reaffirmed the longstanding common law rule that operators of equipment of that nature, whether it be trains, cars, garbage trucks, do not have a duty to take extra precautions to avoid spooking horses. And in making that duty analysis, what's very critical about the Parsons decision is that the Court emphasized that you have to look at the social utility of the lawful conduct involved and what the consequences would be for the community at large and for the defendant in that particular circumstance.  Well, you also seem to think that trespassers were owed a lesser duty, so I'm not sure his analysis is entirely correct. Your Honor, that comment that Judge Walker made is straight out of the Roland v. Christian decision, where a person's status as a trespasser may not be dispositive post-Roland, but it is still a factor for a court to consider. Well, okay. Let's come back to the facts of this case. I'm still trying to understand. If this were an easement case and somebody was arguing that they had established an easement across this property, open and notorious use over a period of time, generally under real estate law, can create adverse possession. Of course, you have to pay taxes and a few other things. But that's an element in real property. Right. Landowners are required to take some affirmative actions to protect their property interest, their own property interest. And now we're talking about protecting the public, be they trespassers or whatever, who are going across your tracks. And, as I say, you look at the pictures in this case, and there's no doubt that at this spot, in any event, that people are openly and notoriously crossing your property where they aren't supposed to be. So in an adverse possession case, you say, well, why didn't you just put up a fence? Then you could signal to the world that they're not supposed to be there. So in this case, what's your response? What does the evidence show with regard to the practicality of doing what counsel is suggesting? Put a six-foot chain-link fence between the crossing guards. That's what I'm trying to get to. First of all, I think the analogy to real property law is very marginal. Well, don't get hung up on that. Okay. But because, going back to the Kristof decision, the tracks themselves, nobody's going to argue that they have a right to be on our tracks as a matter of law. The Kristof decision makes clear as of 2005 that in California, the presence of railroad tracks is notice of an open and obvious danger. Yeah. Now, with respect to fencing itself, counsel's position is fencing is this wonderful panacea. No, I don't think he said it was a panacea. No, I don't think he said it was a panacea. He said it would not take care of everybody, but it's an obvious and easy remedy. It's just like we're doing across the border with Mexico, right? That doesn't support that, Your Honor, for these reasons. We put in evidence in this record, it is uncontradicted. Judge Walker relied upon it in his decision, which makes clear that when you start erecting fences on right-of-way next to railroad tracks, you inject a different set of safety risks into the equation. You create risks to train crews, you create risks to the public, and you create risks to the trespassers who are still going to cut through the fences, climb over them, and get onto our railroad tracks. So I'm so going back to the Parsons case, you look at the social utility of our conduct, and it can't be disputed that railroads are a business of high social utility, whether they're carrying passengers or freight. And next, you look at what would the consequences be for the community and for the defendant. First of all, it would be very, very expensive for the railroad to erect and maintain fences everywhere it encounters trespassing. Second, as I mentioned, you get into the area of safety risks. It is unrebutted that putting up fences along right-of-way creates safety risks that counsel never mentions. He never mentioned it in his brief in response to Judge Walker's order, and he doesn't talk about it today. But that evidence is uncontradicted, and that is why Judge Walker ruled the way he did. Counsel, is it the railroad's position that there is no place for the required defense? Your Honor, I think as a general matter, that is correct. Because of the difficulty of trying to come up with a statement of the duty that would provide predictability and uniformity, that would give notice to railroads as to what they should do with respect to fencing. Now, we do erect fences in places in California as well as elsewhere in the country. We do so where usually municipalities believe that a fence would be the best way to solve a trespassing problem, and we work with those communities to do so. That has never happened in this Hayward area. Counsel is also going well outside the record by talking about how Union Pacific is the only railroad that doesn't fence its right-of-way. That's nonsense. It's not in the record, and it's not true. We take the question seriously. We spend a lot of time and money on it. And all that. Do you want to give your co-counsel some time? I do want to give co-counsel some time. But again, fencing is not the easy answer because it's not effective, it's costly, and it creates safety risks for the public and trespassers and traitors. Thank you. Good morning. May it please the Court. Laurie Sobranski on behalf of Amtrak. I'd like to touch just briefly on the preemption issue. That's the only issue that we have with Amtrak and its status in this litigation. The complaint asserts fundamentally a state cause of action for negligence against Amtrak, arguing that the train was being negligently operated at an excessive speed. What is important about this is what the district court noted in its opinion, which is that federal law preempts state law negligence claims for excessive speed. And it does it because the Federal Railroad Safety Act was enacted in 1970 for the purpose of providing a national uniform system of regulation governing railroad safety and operations. To accomplish that goal, the Federal Railroad Administration does a few things. It sets classifications for tracks based on the characteristics of the track, its And then the FRA sets speed limits commensurate with these various track classifications, and those limits take into account the conditions of the track and the safety considerations and so forth. Those speed limits are codified in 49 CFR section 213.9, and that's Do they take into account whether it's an urban area or rural area or anything like that? They do, Your Honor. In fact, the FRA had intentionally and expressly decided that in urban areas there would be no reduction in train speed. And they arrived at that conclusion because the fact of reducing train speed and then increasing train speed imposed a lot of safety hazards. It was much safer from the FRA's point of view for trains to be operated at consistent speeds. So they did expressly address that, and in the regulations, intentionally do not provide for slowing through urban areas. So in addition to these operating requirements, the FRSA incorporates a preemption provision so that this goal of national uniformity can be achieved. And Section 434 of the FRSA is the section that says that when a railroad is operating at a speed limit, that when these speed limits are set under this Federal system, State law cannot regulate the speed of the trains. It is completely a Federal under Federal control. The United States Supreme Court then applied this Act to a case involving a claim of negligent train speed, just like we have here in Easterwood, and the United States Supreme Court affirmed that when a train is, in fact, traveling within the FRA-established speed limits, that the State law claim of excessive speed is preempted. So the law is very clear on this issue. In this case, it is undisputed in this record, first, that these were Class 4 tracks. That means that the associated speed for a passenger train — This is all in your brief, isn't it? It is, Your Honor. I'm mentioning this because these are just kind of the fundamental principles  You don't think we read your brief? You think we didn't read your brief? No, I'm sure that you did. And I don't mean to — Must not be all that. I don't mean to imply that. But having not heard counsel's response — You've had more than three minutes. Okay. Thank you. Thank you, Your Honor. And the implicit statement is we have read the briefs. Oh, I'm quite certain of that. Your Honors, all I wanted to say on federal preemption was they didn't prove what they need to prove. Trent Allen, the sole witness at the summary judgment motion, is not qualified to render all the opinions, and I've gone into what he didn't prove, and so that's in my brief, so I don't want to go into that. What we've got, this is a spurious issue, the different set of safety risks produced by a six-foot-tall chain-link fence. Any professional, a fireman or a police, can scale that fence in two seconds. A train operator, anybody, any employee can scale that fence in two seconds. You know, it can be scaled very easily if there was a safety issue pending. So there's no difference, there's no new set of risks. The problem is you want to alert the large majority of people that are crossing those tracks, are either asleep or distracted. The fence would perform a very valuable duty in distracting those persons, preventing them from crossing the tracks, and diverting them to either change their direction and go over the safe route or else follow the fence to the crossing guard. And when they get to the crossing guard, there's lights, there's bells, and there's a crossing guard alerting them to the passage of the train. People that are hit by the tracks, if they're not intentionally doing that, are people that are distracted. They're going to work, they're going to school, they're thinking about other things. A fence would really provide a valuable service in preventing those people from crossing the tracks in a distracted state. Thank you very much. Can I ask just one question? Yes, yes. Council suggested that they do fence in cooperation with various municipalities. Have you ever approached Hayward about this issue? Yes. My understanding was that in Hayward, all the fences, I checked with the city, the Hayward claims that they put up all the fence that's surrounding the tracks. The city of Hayward put it up. I don't want to go outside the record. Yeah, okay. Yeah, yeah, okay, I did check that. Thank you.
judges: B. Fletcher, Kozinski, Fisher